THE STATE, EX REL. PERK ET AL., APPELLEES, *v.* COTNER ET AL., APPELLANTS.

(No. 73-59—Decided March 1, 1973.)

*Mr. James M. Wilsman,* for appellees.
*Messrs. Gold, Rotatori, Messerman & Hanna, Mr. Gerald A. Messerman, Messrs. Ginsberg, Guren & Merritt* and *Mr. Joseph W. Bartunek,* for appellants.

*Per Curiam.* An action in mandamus was filed in the Court of Appeals for Cuyahoga County to compel the clerk of the Cleveland City Council to certify to city council an initiative petition to amend the Cleveland city charter and to compel council to submit the proposed amendment to the electors of the city.

The action was brought by a committee of electors, appellees herein, who circulated and filed the petition to initiate a charter amendment which provides for a reduction in the number of members of city council from the present 33 to 15.

The petition was filed with the clerk of city council on August 4, 1972. The city charter requires the clerk to examine such a petition to ascertain whether it is signed by the required number of qualified electors, and to endorse upon the petition a certificate showing the result of that examination *within ten days after the petition is filed.*

The Director of the Cuyahoga County Board of Elections sent the following letter to the clerk of city council:

"In accordance with your request we have completed

the checking of petitions submitted by you to the Cuyahoga County Board of Elections relating to the proposed Cleveland city charter amendment.

"*We find that 22,650 number of signatures are valid.*" (Emphasis added.)

The clerk of city council was on vacation and the acting clerk sent the following letter, dated August 14, 1972, to petitioners:

"The petition you submitted to this office to provide an ordinance for the submission to the electors of the city of Cleveland an amendment to the charter of the city of Cleveland has been examined for the purpose of determining whether the petition was signed by the required number of qualified electors. The duty of making that determination, as you know, is a function of this office imposed by Section 51 of the charter of the city of Cleveland.

"We were advised by the board of elections, on August 9, 1972, that the total vote in the municipal election held on November 2, 1971, was 232,606. It was necessary for us to determine, therefore, whether the petition you submitted contained the signatures of 23,261 qualified electors.

"Investigation has disclosed that the petition does not contain the requisite number of signatures. A count conducted at the board of elections resulted in a finding that *there were 22,650 signatures deemed valid* according to that count [Emphasis added]. That count does not, however, fully disclose the total number of defective signatures. Only the following signatures were excluded in that count:

"1) Those of persons who were not registered voters of the city of Cleveland, or who resided outside of the city or outside of the district;

"2) Illegible signatures;

"3) Signatures which were not in ink or indelible pencil;

"4) Signatures which, upon examination of the named person's actual signature at the board of elections, proved to be invalid.

"While we have not had a full opportunity to explore all other defects, certain problems have been brought to my attention and must be examined. They include the following:

"1) At least four persons who solicited signatures and signed affidavits attesting to the authenticity of such signatures allegedly submitted petitions which were found to contain a large number of forged or fabricated signatures. If that allegation is true, it might be appropriate to discount all signatures contained on petitions circulated by those four persons.

"2) A number of circulators of the petition swore that they were qualified electors of the state of Ohio, whereas records reflect that they are not registered voters. If the affidavit of the circulator is false, that fact may well invalidate the petition sworn to by such circulator and require that all signatures on such petitions be rejected.

"3) A substantial number of circulators swore to the fact that they witnessed the affixing of every signature which appeared on the petitions which they circulated and that such signatures were genuine to the best of their knowledge and belief, whereas many of the petitions allegedly contained signatures which were written by a person other than the signer. We believe that it may be necessary, if that allegation is true, to discount all of the signatures obtained by those circulators.

"We can say, therefore, that you do not have the requisite number of signatures. We cannot yet say precisely how many of the signatures you submitted are valid."

A calculation based upon this letter shows the petition needed only 611 additional valid signatures to complete the petition properly. The charter provided for an additional 15 days in which to secure the additional valid signatures. On August 22, additional part-petitions containing 1,685 valid signatures were filed.

By certificate dated August 31, 1972, 27 days after the original part-petitions were filed, the clerk advised the circulators of those petitions that "further examination" of

the original part-petitions revealed an insufficiency of 4,138 signatures.

The Court of Appeals granted the writ of mandamus, stating in its journal entry:

"This court hereby instructs the clerk of council to submit the proposed amendment to the Cleveland city council as required by Section 200 of the charter. This case is continued until council performs its obligations under that charter provision and so advises this court."

The determinative issue emerging from the foregoing recitation of the factual background in this appeal is whether the clerk of city council may continue to invalidate signatures on the original part-petitions after expiration of the ten-day period specified in Section 51 of the city charter.

The language of Section 51, that "within ten (10) days from the filing of a petition the clerk shall ascertain whether it is signed by the required number of qualified electors," is unambiguous and limits the time period within which the clerk must act in respect to the original petition. Indeed, if the clerk were permitted to reexamine the original part-petitions for signature defects after the ten-day period, such action would totally negate the effect of Section 52. That section permits the filing of additional part-petitions within 15 days of certification by the clerk that the original petition is insufficient. To hold that the city clerk may ignore the provisions of Section 51 would deprive petitioners of the right given them to amend, and thus validate, the petition by the filing of the required number of additional signatures.

The assertion by appellants that "certification of the sufficiency of the petition would require acceptance of signatures that were forged, signatures that were obtained by circulators who engaged in a systematic pattern of illegal conduct, signatures that appear on petitions containing more than one signature affixed by the same hand, part-petitions that were circulated by persons who were not registered voters, and part-petitions that were improperly

notarized or not sworn to at all"—can not be considered to relieve the clerk, an agent of city council, of his duty to act upon the petition within ten days. It is evident that the charter provisions are designed to afford the electors the right to initiative, and the clerk of council should not be permitted, through his own failure to observe charter provisions, to prevent the exercise of that right.

Although appellants argue that "ultimately, the determination concerning the sufficiency of an initiative petition must be made by the legislative authority of the municipal corporation," such issue is not now before this court. At this juncture, council has taken no action on the proposed charter amendment. But see *State, ex rel. Polcyn,* v. *Burkhart* (1973), 33 Ohio St. 2d 7.

Section 200 of the city charter provides, in part, that: "Proposed amendments to this charter may be submitted * * * and upon petition signed by ten per centum of the electors of the city, setting forth any such proposed amendment, prepared and filed with the council, through its clerk and in the manner and form prescribed in this charter for the preparation and filing with the clerk of an initiative petition for an ordinance, such proposed amendment shall be submitted to the electors of the city by the council."

The Court of Appeals continued the case until council "performs its obligations" under the charter. Council is thus required, upon submission of the proposed amendment to it by the clerk of council, to proceed pursuant to Section 200 of the charter.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, STERN, W. BROWN and P. BROWN, JJ., concur.

CORRIGAN and CELEBREZZE, JJ., dissent.